## Case No. 6,193.

### HASKELL v. INGALLS.

[1 Hask. 341; [1] 5 N. B. R. 205.]

District Court, D. Maine. May 10, 1871.

BANKRUPTCY—ACT OF 1867—FRAUDULENT OR PROHIBITED PREFERENCE—JUDGMENT CREDITOR.

1. The seizure of an insolvent debtor's property on execution, within four months of his

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

bankruptcy proceedings, by a creditor having reasonable cause to believe the debtor insolvent, when not made to perfect the lien of a valid attachment, works a fraudulent preference under the bankrupt act [of 1867 (14 Stat. 517)], if shown to have been so intended by the parties and intended to defeat the purposes and policy of the law.

[Cited in Warren v. Delaware, L. & W. Ry. Co., Case No. 17,194.]

2. An intended preference and a purpose to defeat the provisions of the bankrupt act are shown by the instituting of a suit against an insolvent debtor and the attachment of his property, followed by judgment and execution, without objection by the debtor, and a seizure of the property thereon, without the debtor meantime submitting his property to equal distribution in bankruptcy.

[Cited in Warren v. Tenth Nat. Bank, Case No. 17,202.]

3. Semble. From later authorities, that mere inaction by the debtor in permitting a judgment and execution against him upon a valid debt, without meantime filing his petition to be adjudged bankrupt, is not "suffering his property to be taken on execution" so as to defeat the seizure for that cause. Buchanan v. Smith, 16 Wall. [83 U. S.] 277; Wilson v. City Bank, 17 Wall. [84 U. S.] 473; National Bank v. Warren, 96 U. S. 539.

In bankruptcy. Bill by [Thomas H. Haskell] the assignee of a bankrupt, to restrain a judgment creditor from gaining a fraudulent preference by taking the land of the bankrupt in execution, that had been seized thereon within four months of the bankrupt proceedings and not to perfect the lien of a valid attachment. The respondent [Darwin Ingalls] by answer asserted that he was attempting to collect his debt by legal process in the usual course, and had obtained a seizure of his debtor's land on an execution without fraud or collusion, and thereby had acquired a valid lien upon the debtor's land that could not be defeated by his subsequent proceedings in bankruptcy, notwithstanding the seizure was made within four months thereof. The facts were agreed.

Thos. H. Haskell, pro se.

Josiah H. Drummond, Woodbury Davis, and Nathaniel S. Littlefield, for respondent.

FOX, District Judge. Cleaves was adjudged bankrupt on his own petition filed March 17, 1871, and the plaintiff has been duly qualified as his assignee.

On the 20th of December last the respondent attached on a writ against Cleaves, returnable at the January term, all said Cleaves' real estate. The action was duly entered, the defendant defaulted, and judgment rendered January 30th. The real estate attached was seized on the execution February 21st, and thereupon before any levy was completed, on the 12th of April, the assignee instituted this suit to enjoin further proceedings upon said execution against the estate of the bankrupt on the ground that a fraudulent preference would be obtained. The case is submitted on bill, answer and agreed statement. It is admitted, that on the 20th of December the bankrupt

was insolvent, and that the debt due Ingalls was for money lent by him to the bankrupt in September last, to be repaid in thirty days. The answer admits that the respondent, previous to commencing his action, had called upon Cleaves several times for payment; that he had always promised to pay in a few days, but always failed so to do; that he knew other suits had been commenced against Cleaves and his property attached thereon.

The bankrupt being then insolvent, having thus repeatedly failed to pay borrowed money when pressed for payment, and the respondent having been compelled, with other creditors, to resort to legal process to obtain security for their demands, I hold he must be held to have then had reasonable cause to believe the bankrupt insolvent, as is required by the provisions of the bankrupt act to invalidate a preference.

The bankrupt must be deemed to have intended a preference to the attaching creditors, as he allowed their suits to proceed forthwith to judgment and execution against him, and he delayed taking any steps to avail himself of the provisions of the bankrupt act and vacate the attachments until the rights of the creditors had not only ripened into execution, but they had actually seized his real estate thereon and were proceeding to dispose of the same in satisfaction of their claims. All this the bankrupt could have obviated by answering to the actions and filing his petition to be decreed bankrupt. The inevitable consequence of his acquiescence in the actions of the creditors was to give them a preference. His intention as well as that of the creditor must be judged of by the legal consequences of their conduct, and I therefore find that the bankrupt did intend to give and the respondent, in fraud of the act, did intend and attempt to obtain a preference over the other creditors by the suit and proceedings under it.

The case does not find that the bankrupt procured the attachment to be made or his property to be seized on execution; but it does most clearly establish that he being insolvent suffered his property to be attached and afterwards taken on legal process with intent to give a preference to the attaching creditor; thus an act of bankruptcy is shown, for which most certainly he could have been adjudged a bankrupt on a creditor's petition, if filed within six months, and if Cleaves were an involuntary bankrupt, the present bill could certainly be maintained, as the books contain at least a score of authorities, in which, in similar cases, creditors thus obtaining a preference by legal process, have been enjoined against further proceedings, or required to refund the amounts thus collected by them in fraud of the act.

The proceedings in bankruptcy having been commenced within four months of the attachment, all rights by virtue of such attachment were dissolved under the provi-

sions of the 14th section of the act, and the respondent is compelled to rely on his alleged lien by force of the seizure of the estate on the execution on the 20th of February last, after Cleaves had committed an act of bankruptcy by suffering his property to be attached on legal process by the respondent. It is claimed, that the creditor, not having instituted involuntary proceedings, but having allowed Cleaves to proceed in his own behalf as a bankrupt, the case is not affected by the provisions of the 39th section, but must depend on the 35th section, "relating to preferences and fraudulent conveyances;" that whilst by the 39th section, the procuring or suffering of his property to be taken on legal process by an insolvent, intending a preference, is declared an act of bankruptcy and is clearly in fraud of the act, yet by the provisions of the 35th section, it is only when such insolvent, with such intent, procures his property to be attached or seized on execution, that the attachment or seizure is declared void; that, ex industria, the suffering by an insolvent of his property to be thus attached, or seized, is not denounced, and such an attachment or seizure on execution is not declared void, when the debtor is not active in procuring it to be made, but is only passive in allowing the law to take its usual ordinary course, and apply his property by due process of law in discharge of his liabilities.

It is true that the 35th section does not in express words declare an attachment or seizure on execution void, which an insolvent suffers to be made and continue upon his property; but after declaring, that if an insolvent with intent to give a preference procures any part of his property to be attached or seized on execution, the same shall be void, it further provides, that if such debtor "makes any payment, pledge, assignment, transfer or conveyance of any part of his property either directly or indirectly, absolutely or conditionally, the person receiving such payment, &c., having reasonable cause to believe such person is insolvent" and that the same is made in fraud of the act, "the same shall be void"; and if not made in the usual and ordinary course of business of the debtor, "the fact shall be prima facie evidence of fraud." The taking of a debtor's property on legal process cannot be said to be in the ordinary course of his business.

In the case of In re Black [Case No. 1,457], Judge Blatchford in a most able opinion, which has been cited and approved by nearly every one of the district judges, has examined this question elaborately and with great care. It was a case of involuntary bankruptcy where the party had suffered his property to be taken on execution, and was clearly within the 39th section. After demonstrating such to be the case the learned judge proceeds: "The same result follows under the 35th section: The two sections are in pari materia and must be construed together. There is however no conflict between them, and they are of the same purport and tenor. * * * The act of suffering the creditor to take the property of the firm on legal process, the firm being insolvent, when such taking could have been prevented by an application in voluntary bankruptcy, was a fraud on the provisions of the act, and must be held to have been a transfer made by the debtors and with a view to give a preference to the creditor. The creditor was to be benefited by the transfer, and had reasonable cause to believe the firm to be insolvent, and that the transfer was made in fraud of the provisions of the act. The transfer was not made in the usual and ordinary course of the debtor's business, and therefore it was void and the assignee is entitled to recover the property transferred or its value." The decision in Re Davidson [Id. 3,599], covers this point. It was a voluntary bankruptcy, and Judge Blatchford there held that the debtor committed an act of bankruptcy in suffering his property to be taken on legal process; that thereby the creditor obtained a preference, and not having surrendered the property, he could not prove his claim, and the sheriff was required to pay to the assignee the amount thus collected on the execution.

The bankrupt act was intended to prevent all preferences by an insolvent within four months of the commencement of proceedings in bankruptcy, and to insure an equal distribution of his estate among his creditors. I cannot believe that a seizure of an insolvent's estate on execution by which if perfected, gross injustice would be perpetrated against the general creditors, can avail a creditor if the insolvent should immediately file his petition to be adjudged a bankrupt, whilst it would be set aside and adjudged void if the creditors should succeed in the case and first procure a decree of bankruptcy against him. Such a construction of the law would cause the validity of the seizure to depend entirely on the alacrity and diligence of the insolvent; at the moment the seizure was made by an officer he could file a petition, thereby preventing his creditors from commencing proceedings against him by which the seizure would be defeated. Opportunity for fraud and collusion and for the indirect preference of favored creditors would thus be obtained, which would go far to defeat the great and leading object of the bankrupt law.

This construction of the law, I think, is sustained by the decisions in Wilson v. Brinkman [Case No. 17,794]; Fitch v. McGie [Id. 4,835]; Re Wells [Id. 17,388]; Street v. Dawson [Id. 13,533]; Beattie v. Gardner [Id. 1,195]; Smith v. Buchanan [Id. 13,016]; and Vogle v. Lathrop [Id. 16,985].

Most of these were cases of involuntary bankruptcy, but this distinction is not, that I can perceive, made the ground of the decision and relied upon in either of the opinions. On the contrary, they all seem to estab-

lish the principle that as a payment of money would be a preference, the obtaining of it would be a preference. The obtaining of it by legal proceedings, not prevented by the debtor availing himself of the law, is averse to the fundamental principles of the bankrupt act and is invalid as against the assignee.

In Beattie v. Gardner [supra], Judge Hall says: "It can scarcely be doubted that an act which directly and manifestly tends to defeat the purposes and policy of the bankrupt act, and which was done in contravention of and with an intent to defeat such purpose and policy, is for that reason fraudulent and void." As said by Lord Mansfield in 2 Cowp. 629, "A fraudulent contrivance, with a view to defeat the bankrupt laws, is void and annuls the act." This principle has received the emphatic approval of the supreme court of the United States in Shawhan v. Wherritt, 7 How. [48 U. S.] 627. Grier, J., in delivering the opinion of the court says: "The policy and aim of bankrupt laws are to compel an equal distribution of the assets of the bankrupt among all his creditors; hence when a merchant or trader, by any of these tests of insolvency, usually termed acts of bankruptcy, has shown his inability to meet his engagements, one creditor cannot by collusion with him, or by a race of diligence, obtain a preference to the injury of others. Such conduct is considered a fraud on the act, whose aim is to divide the assets equally and therefore equitably. * * * A creditor may always recover payment of his debt or security for it from his debtor, unless he has notice or knowledge that his debtor has committed an act of bankruptcy, and then he is forbidden to receive payment of his debt, or to obtain any other priority or advantage over the other creditors of the bankrupt; and if notice of this fact to a creditor makes a payment by the debtor void, it is obvious that a security or priority gained by suit in a state court, after such notice could have no better claim to protection, for notice of the act of the bankruptcy is the test of the mala fides which vitiates the transaction." In that case a party was compelled to refund to the assignee the amount he had obtained from the bankrupt's estate by proceedings in the state court.

"These doctrines, thus held to be applicable to the act of 1841," are said by Judge Blatchford in Re Black [Case No. 1,457], to be much more applicable to the act of 1867, as it was the intention of the congress by that act to "strike at the root of all preferences obtained by a creditor, when his debtor is insolvent or in contemplation of insolvency, by the taking of the debtor's property on legal process, whether the taking be by an act of procurement or an act of sufferance, where there is an intent on the part of the debtor to give such preference, and the creditor has reasonable cause to believe that the debtor is insolvent."

The present bill may well be maintained, both on the express provisions of the bankrupt act and the general principle that the acts of the respondent in thus obtaining a preference were fraudulent and void, being intended by both the bankrupt and the respondent to defeat the purposes and policy of the law.

Perpetual injunction to restrain the respondent from proceeding with his seizure and sale of the estate of the bankrupt on the execution recovered against him by said respondent.